UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PORTON CAPITAL, INC., ) | |
|                 Plaintiff ) | Misc. Civil Action No. _____ |
| v.               ) | |
|               ) | |
| CHARLES R. KUMMETH, ) | |
|           Defendant. ) | |

**APPLICATION OF PORTON CAPITAL INC. FOR AN ORDER
DIRECTING CHARLES R. KUMMETH TO PROVIDE DISCOVERY UNDER
28 U.S.C. § 1782 FOR USE IN A PROCEEDING BEFORE A FOREIGN TRIBUNAL**

Pursuant to 28 U.S.C. § 1782, Porton Capital Inc. ("Porton Capital" or "Applicant") respectfully submits this Application for an order directing Charles R. Kummeth, a person located in this District, to provide discovery for use in proceedings pending in the United Kingdom.

**BACKGROUND**

Porton Capital Inc. is a claimant in proceedings in the High Court of Justice, Queen's Bench Division, Commercial Court in London, United Kingdom, against 3M UK Holdings Limited ("3M UK"). In that action Porton Capital and another claimant seek damages from 3M UK for breach of a contract dated as of February 14, 2007, between former shareholders of a British company known as Acolyte Biomedica Limited ("Acolyte") and 3M UK. Porton Capital and the other claimants in that action, Porton Capital Technology Funds and Ploughshare Innovations Limited, are former Acolyte shareholders which sold their Acolyte shares to 3M UK under that contract. Charles R. Kummeth, the person from whom discovery is sought, was Division Vice President of the 3M Medical Division until 2008, signed the contract at issue in

the foreign action, and thereby undertook to perform obligations that the Applicant therein seeks to show were breached to its detriment.

### A.   The Parties to the Foreign Proceeding

1.   Applicant Porton Capital Inc. is a Cayman Islands corporation, with a registered corporate address of Ugland House, South Church Street, George Town, Grand Cayman.

2.   The defendant in the foreign action, 3M UK Holdings Limited, is a United Kingdom and Wales company, with registered number 241888 and a registered corporate office at Cain Road, Bracknell, Berkshire RG12 8HT. 3M UK is a subsidiary of 3M Company ("3M Co."), a Delaware corporation with its principal place of business in St. Paul, Minnesota.

3.   Charles R. Kummeth, as a former employee of 3M Co., is not a party to the foreign proceeding. Mr. Kummeth is found in this District.

### B.   Summary of the Foreign Proceeding

4.   The claimants' Particulars of Claim provide a statement of the Applicant's contentions before the foreign tribunal. *See* Re-Amended Particulars of Claim, attached hereto at Exhibit 1. 3M UK's pleading in response, *see* Amended Defence and Counterclaim, attached hereto as Exhibit 2, and the claimants' reply, *see* Re-Amended Reply and Defence to Counterclaim, attached hereto as Exhibit 3, shed further light on the nature of the British controversy, which is summarized below.

5.   On February 14, 2007, 3M UK and the former Acolyte shareholders, including Porton Capital, executed a sale and purchase agreement (the "SPA") with 3M UK. *See* Sale and Purchase Agreement, attached hereto as Exhibit 4.

2

6.     At all applicable times, Acolyte was a United Kingdom limited company that developed, produced, and marketed various products for the purpose of detecting and/or testing for certain micro-organisms, including methicillin-resistant *Staphylococcus aureus* ("MRSA") on clinical nasal swab samples.  MRSA and related bacteria are known as "super bugs" that are a major health concern in hospitals worldwide.  BacLite is a product developed and sold by Acolyte to test for the presence of MRSA in clinical nasal swab samples.  *See* Exhibit 1, ¶ 1.

7.     In clinical trials in the United Kingdom, Acolyte established BacLite as highly sensitive in its detection of MRSA and thus secured regulatory clearance for BacLite in the European Union.  *See* Exhibit 1, ¶ 19-20.

8.     At all applicable times prior to execution of the SPA, Acolyte's entire issued share capital was owned by various shareholders, including Porton Capital, which are referred to in the SPA collectively as "Vendors."  *See* Exhibit 4, Schedule 1.

9.     Under the SPA, 3M UK purchased the shares of Acolyte for an initial payment plus additional earn-out payments consisting of revenue earned through 2009.  3M UK agreed, in Clause 4.14 of the SPA, to actively market BacLite in the major markets including the United States; to diligently seek the necessary regulatory approvals in the major markets; and to support the earn-out business with resources from various functional areas of 3M, including marketing, communications, information technology, technical service, legal, tax, and accounting, to a level commensurate with resources made available to other businesses within the 3M Medical Division.  *See* Exhibit 4, Clause 4.14.

10.    The Applicant seeks to discover from Mr. Kummeth facts showing that 3M UK did not perform its contractual commitments to actively market the earn-out products including BacLite; to diligently seek regulatory approvals in the United States and other markets; and to

invest resources commensurate with what the Medical Division, under Mr. Kummeth's leadership, invested in other products. In regards to the latter in particular, the Applicant seeks to discover facts regarding how and to what extent the 3M Medical Division invested in other products under Mr. Kummeth's responsibility as Division Vice President.

11.     On July 14, 2008, the person from whom discovery is sought, Charles R. Kummeth, as Division Vice President, 3M Medical Division, sent an email to John McKinley, as representative of the Vendors, "requesting the Vendors' consent to cease the business of the development and marketing of the Earn Out Products pursuant to Section 4.14(i) of the [SPA] and potentially dispose of the assets." *See* July 14, 2008 Email from Charles R. Kummeth to John McKinley, attached hereto as Exhibit 5. Mr. Kummeth stated three reasons for his request to the Vendors, including the Applicant, for consent to cease the business.

12.     Mr. Kummeth's first stated reason for requesting consent to cease the business was that "[w]e have concluded that the clinical performance of the product on specificity and sensitivity is not high enough, broad enough or reliable enough to meet customer requirement[,]" that the "current product configuration cannot be run under a protocol that creates hospital work-flow efficiency[,]" and that "the product as designed will not support a broad portfolio of assays." *Id.*

13.     Mr. Kummeth's second stated reason was that "[a]dvances of existing technologies and slower than expected adoption rates to new technologies have minimized customer conversions for the current product" and "resulted in low sales to date and a limited sales forecast for the Earn-Out Period." *Id.*

14.     Mr. Kummeth's third stated reason was that "[t]he level of investment and costs associated with maintaining the current operations along with further investment in improving the product is not financially feasible." *Id.*

15.     The Applicant reasonably and justifiably seeks such discovery herein to support its breach of contract claim against 3M UK. The Applicant seeks to depose Mr. Kummeth about each of the grounds he stated in his email to Mr. McKinley of July 14, 2008, for requesting the Vendors' consent to cease performance under the SPA. As signatory to the SPA on behalf of 3M UK, Mr. Kummeth can provide information regarding 3M UK's projections about BacLite that formed the basis of the terms of the SPA.

16.     In regards to Mr. Kummeth's first stated reason, Porton Capital seeks to depose Mr. Kummeth about how he was able to reach scientifically-sound conclusions about product performance, protocol efficiency, and design when the U.S. clinical trials were not initiated or completed in accordance with the testing protocol approved by the U.S. Food and Drug Administration, were halted before conclusion, and were never resumed in accordance with the FDA-approved protocol as recommended by persons ultimately reporting to Mr. Kummeth. *See* Exhibit 1, ¶¶ 7-9, 21-29.

17.     In regards to Mr. Kummeth's second stated reason, Porton Capital seeks to depose Mr. Kummeth about the basis for his conclusion, within approximately a year since the acquisition, that the market for BacLite was materially different from what 3M UK believed it was at the time of the acquisition, given 3M UK's projections about BacLite that formed the basis of the decision to acquire Acolyte. *See* Exhibit 1, ¶¶ 7-9, 35-43.

18.     In regards to Mr. Kummeth's third stated reason, Porton Capital seeks to depose Mr. Kummeth about the basis for his conclusion, within approximately a year since the

acquisition, that BacLite was not financially feasible, given 3M UK's projections about BacLite that formed the basis of the decision to acquire Acolyte. *See* Exhibit 1, ¶¶ 14-15, 44-45.

19.     The discovery request attached hereto as Exhibit 6 is designed to obtain testimony and documents from Mr. Kummeth related to the information described above. *See* Exhibit 6, Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action issued to Charles R. Kummeth.

20.     Mr. Kummeth is a non-resident of the United Kingdom, thus he is beyond the subpoena power of the High Court of Justice.    Additionally, United Kingdom discovery procedures do not allow for depositions of witnesses prior to trial.  This Application under 28 U.S.C. § 1782 is therefore proper, justified, and useful in order to facilitate the gathering of information for use in the U.K. proceeding in the manner intended by Congress in the statute.

## THE APPLICATION MEETS ALL OF THE REQUIREMENTS OF 28 U.S.C. § 1782

21.     Entitled "Assistance to Foreign and International Tribunals and to Litigants Before Such Tribunals," 28 U.S.C. § 1782 provides that an "interested person" may apply to "[t]he district court of the district in which a person resides or is found" for an order "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  Specifically, Section 1782 provides, in relevant part:

> The district court of *the district in which a person resides or is found* may order him to give his testimony or statement or to produce a document or other thing *for use in a proceeding in a foreign or international tribunal* . . . .  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . .  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the

> document or other thing. To the extent that the order does not prescribe
> otherwise, the testimony or statement shall be taken, and the document
> or other thing produced, in accordance with the Federal Rules of Civil
> Procedure.

28 U.S.C. § 1782 (emphasis added).

22.   In order for a district court to exercise its jurisdiction pursuant to Section 1782, an applicant who seeks such discovery must show that (1) that the discovery is sought from a person found in the district; (2) that the discovery is for use in a proceeding before a foreign tribunal; and (3) that the applicant is an "interested person" before such foreign tribunal. *See In re Schmitz*, 376 F.3d 79, 83 (2d Cir. 2004) (citing *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). Porton Capital has demonstrated each of these statutory requirements.

23.   Porton Capital is seeking discovery from Charles R. Kummeth, a person found in the Western District of New York. Upon information and belief, Mr. Kummeth is the President of the Lab Consumables Division of Thermo Fisher Scientific. *See* Exhibit 7, LinkedIn Profile Page for Charles Kummeth. Upon information and belief, Mr. Kummeth's maintains his business address at 75 Panorama Creek Drive, Rochester, New York 14625. *See* Exhibit 8, Thermo Fisher Scientific Locations.

24.   Porton Capital is seeking discovery in the United States for use in its pending breach of contract case against 3M UK Holdings Limited in the High Court of Justice, in the Commercial Court of the Queen's Bench Division, in London.

25.   Porton Capital is an "interested person" within the meaning of Section 1782, as it is a Claimant in the proceeding pending before the High Court of Justice in the United Kingdom. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (stating that "[n]o

doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

26.     Given that the Section 1782 statutory requirements are met, this Court is authorized to grant this application for judicial assistance to obtain discovery in the United States for use in the foreign proceeding currently pending in the High Court of Justice. *See In re Application of Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997).

27.     In summary, because Porton Capital has proven that all of the requirements for invocation Section 1782 exist, this Court has jurisdiction to order Mr. Kummeth to provide the requested discovery.

## THE COURT SHOULD EXERCISE ITS JURISDICTION UNDER 28 U.S.C. § 1782 TO GRANT THE APPLICATION

28.     Once the statutory prerequisites are met for the court to exercise its jurisdiction pursuant to Section 1782, a district court has the discretion to grant an application under Section 1782 if granting the application would (1) provide an efficient means of assistance to participants in international litigation and (2) encourage foreign countries to provide reciprocal means of assistance to U.S. courts. *See In re Metallgesellschaft*, 121 F.3d at 78; *see also Intel*, 542 U.S. at 264-65 (listing several factors for a court to consider when determining whether to grant a Section 1782 request, after determining that the request meets the Section 1782 statutory requirements). Both of these aims would be furthered by granting this Application.

29.     The proposed discovery is closely tailored to seek discovery of information that is likely to be pertinent to Porton Capital's breach of contract claim against 3M UK. As shown above, Porton Capital seeks to examine Mr. Kummeth about matters formerly under his responsibility at the time he worked for 3M Co., which are directly related to the U.K.

proceedings. Therefore, granting the Application would be an efficient means of assisting a litigant before a foreign tribunal.

30.     Additionally, granting the Application would further the exchange of judicial assistance between the United States and the United Kingdom. The Supreme Court observed in *Intel* that the House of Lords has ruled that non-discoverability under English law did not stand in the way of a litigant in an English proceeding seeking discovery assistance in the U.S. pursuant to Section 1782. *See Intel*, 542 U.S. at 262 (citing House of Lords decision *South Carolina Ins. Co. v Assurantie Maatschappij "De Zeven Provincien" N. V.*, 1 App. Cas. 24 (1987)). Whatever might be said about other jurisdictions, the Supreme Court has specifically concluded that Section 1782 furthers the exchange of judicial assistance between the United States and the United Kingdom. In fact, the Court in *Intel* reached that conclusion in circumstances that could be said to be less propitious than in this case. In this case, unlike *Intel*, the person from whom discovery is sought is not a party to the foreign proceeding from whom the foreign court may require discovery. Thus, all of the factors that the courts have found to be relevant to an application under Section 1782 support granting the Application.

31.     The Court also can issue a subpoena harmoniously with the confidentiality judgment entered by the High Court of Justice, Queen's Bench Division, Commercial Court in London, United Kingdom on January 22, 2010. Indeed, federal courts "possess sufficient tools to ensure that confidential discovery material is not publicly disclosed." *In the Matter of the Application of the Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (citing *Intel*, 542 U.S. at 265-66) (granting § 1782(a) discovery request).

32.     Finally, because discovery under Section 1782 is generally conducted "in accordance with the Federal Rules of Civil Procedure," it is appropriate for the Court to issue a

subpoena on an *ex parte* basis, without prejudice to the rights of the subpoenaed party to file a motion to quash. *See* 28 U.S.C. § 1782 ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."); *see also* Fed. R. Civ. P. 45(c)(3) (requiring or permitting a court to quash or modify a subpoena).

33.    For the reasons set forth above, Applicant Porton Capital, Inc. respectfully requests that this Court exercise its jurisdiction pursuant to 28 U.S.C. § 1782 and permit Applicant to conduct the requested discovery.

Respectfully submitted,

Dated: January 19, 2011          By: _Robert D. Leary_

Robert D. Leary
Kenney Shelton Liptak Nowak LLP
Suite 510, Rand Building
14 Lafayette Square
Buffalo, New York  14203
716-853-3801 (telephone)
716-853-0265 (facsimile)
rdleary@kslnlaw.com

Michael P. Socarras (*pro hac vice* pending)
Matthew M. Leland (*pro hac vice* pending)
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C.  20005
202-756-8000 (telephone)
202-756-8087 (fax)
msocarras@mwe.com
mleland@mwe.com

ATTORNEYS FOR APPLICANT
PORTON CAPITAL, INC.